

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2018 MAY -1 PM 1:23

CLERK_____
SO. DIST. OF GA.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

**C V 4 1 8 - 1 0 0**

| | |
|---|---|
| ANTHONY OLIVER, an individual;<br><br>         Plaintiffs,<br>vs.<br><br>CITY OF POOLER, a public entity; CITY OF SAVANNAH, a public entity; CITY OF PORT WENTWORTH, a public municipality; CITY OF BLOOMINGDALE, a public entity; STATE OF GEORGIA, a state municipality; NATHAN DEAL, in his official capacity as GOVERNOR; CHARLES DAVIS, in his individual capacity; ADAM WILLIS, in his individual capacity; ADRIAN GATES, in his individual capacity; MATT LIBBY, in his individual and official capacity; ASHLEY BROWN, individual and official capacity; MARK REVENEW, in his individual and official capacity BLAIR JEFFCOAT, in his individual and official capacity; DOES 1-10, inclusive.<br><br>         Defendants. | Case No.:<br><br>**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND INJUNCTIVE 42 U.S.C. § 1983**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT FOR CIVIL RIGHTS AND INJUNCTIVE RELIEF

42 U.S.C. § 1983

I

## INTRODUCTION

1.     Collectively, Defendants engage in a pattern or practice of unlawful conduct through which they routinely and systematically arrest, detain, incarcerate, issue citations and beat innocent people and citizens of the communities in the Southern District of Georgia. Without even the most basic procedural safeguards, and in violation of these citizens federal constitutional civil rights, Defendants systematically think they can do whatever strikes their fancy. Even if that means using police and law enforcement resources to carry out their malicious and sadistic violations of criminal and civil law.

2.     It is well established that the Defendants and other law enforcement agencies throughout the State of Georgia seem to believe that they are far above the laws.

3.     The Defendants operate the "good old boy system" to the extent that each other will lie, cheat, steal, file false police reports, shoot unarmed citizens and then lie for one another again, this is the case here.

4.     The State of Georgia, ("STATE OF GA") operates an arm of the State called the Georgia Department of Transportation., ("GADOT").

5.     Through the GADOT, upon information and belief, pays local law enforcement agencies in certain counties where road work in being done to help and provide security details to ensure the lives and safety of not only the GADOT workers, but also the lives of the commuters. The GADOT and the STAET OF GA is responsible for paying different police agencies for the security services of all police and sheriff officers who provide security to the work details. Unlike other States around the Country like Michigan, Illinois, Florida, Utah and California for example, those States utilize a State Trooper to provide security for the safety of the citizens and workers on all construction sites.

2

6.     In the State of Georgia, this isn't the case. The STATE OF GA spends millions of dollars each fiscal year that pays local city and county police to provide such security. Should the STATE OF GA eliminate this "good old boy" program, the Plaintiff and the citizens of this State could see their hard-earned tax payer dollars go towards something more promising. City and County police are to be used to fight crime in their respective cities and counties, not go out on security details and do whatever they want to do like sleeping in the police cars on the side of the road, providing escorts to their friends and family, chasing down speeders, or motorists for traffic violations. The purpose of the sham program of the STATE OF GEORGIA paying local municipalities for security. Instead, the Defendants who collect an hourly wage from the STATE OF GEORGIA abandoned their posts to go and chase down traffic violators.

7.     To help with supplemental financial monies, the Defendants, all of whom are off duty police officers to begin with, will chase down motorists and call other law enforcement officers, most of whom are their friends, pals or neighbors, to issue citations of the off-duty officers behalf and in the event the citation is paid, the off-duty officers municipality reaps the financial benefits. Again, this is the said case here. In the end, the only one that suffers harm is the Plaintiff and the freeway construction workers who are left abandoned by the very City and County police that was hired to help protect them.

8.     Defendants take advantage of the citizens of the Cities with the County of Chatham. The Defendants do not afford the Citizens their constitutional rights so secured by the Federal Constitution. As a result, (1) the Cities of Pooler, Savannah, Bloomingdale and Port Wentworth, by and through their sworn peace officers engages in a practice of leaving construction sites to pull over speeders; (2) pulling citizens over without probable caused; (3) pulling over knowing each of the individual Defendants and officers are "off duty" and do not have authority to do

3

so under the laws of the State of Georgia and the Constitution; (4) the officers of these agencies engage in a pattern and practice of repeatedly and refusing to provide the citizens without the basic essentials of fairness and due process such as a timely traffic stop that amounts to a prolonged detention; and (4) Defendants collectively engage in a pattern or practice of imposing severe consequences, including denial of medical treatment, due process, unlawful search and seizure, prolonged detention, retaliation, and with complete disregard for the rights of the citizens of the State of Georgia, as well as the Plaintiff.

9.    Upon information and belief, the Governor of the State of Georgia and the GADOT conclusively, directly and indirectly authorizes and allows the civil and criminal Defendants in this action to conduct such misconduct so that the STATE OF GA and the GADOT will receive a fraction of the illegally obtained monies through traffic citations. Plaintiff therefore sues the Defendant Nathan Deal, ("DEAL") to eliminate such misconduct.

10.    The repercussions of the constitutional violations perpetrated by the Defendants are severe and far-reaching. Citizens like the Plaintiff, are regularly and repeatedly handcuffed, arrested, incarcerated and held for hours during traffic stops by these off-duty officers without probable cause, regardless of the severity- or lack thereof-of the alleged offense or traffic violation.

11.    Here, Plaintiff was pulled over by an off-duty officer employed by the City of Pooler, ("CITY OF POOLER") assigned to a security detail that, by all accounts, was supposed to be securing a construction site, for an alleged illegal traffic U-turn committed by Plaintiff. Once the officer stopped Plaintiff, he threatened the Plaintiff with additional consequences once Plaintiff began to cite the law and point out that the officer stopped Plaintiff in downtown Savannah, not even remotely close to the CITY OF POOLER.

4

12.    Despite knowing that the officer was being recorded, the officer stated he could do whatever he wanted and that the officer knew the Plaintiff personally and about a potential lawsuit that Plaintiff was filing against various police and sheriff agencies for injunctive relief only. The officer admitted that he was issuing the citation based on these reasons alone. Despite knowing he was off duty, the officer then summoned an officer from the City of Savannah. Over the next hour, Plaintiff remained detained on the side of the I-16 freeway. When Plaintiff asked to leave, various officers arrived from four other cities and Plaintiff was informed that he would be shot if he left.

13.    Through the construction security detail, the GADOT also contracts with the City of Port Wentworth, ("PORT WENTWORTH"), City of Savannah, ("CITY OF SAVANNAH"), City of Bloomingdale, the County of Chatham, ("COUNTY") and the City of Bloomingdale, ("CIYT OF BLOOMINGDALE") for off duty officers.

14.    Once Plaintiff continued to be detained, an officer arrived from the CITY OF SAVANNAH almost an hour later to cite Plaintiff for the alleged illegal U-turn. When Plaintiff demanded to know why the CITY OF SAVANNAH was citing the Plaintiff for the ticket, the Savannah Police officer said informed the Plaintiff that in the STATE OF GEORGIA, an off-duty officer can call another officer to issue a citation and the on-duty officer will appear in court and testify to what the off-duty officer told the on-duty officer.

15.    Plaintiff then recognized the Savannah officer and while recording him, Plaintiff asked him if his name was "Adrian," but the officer refused to admit that he was. In fact, last year while at a waffle house in Savannah, Plaintiff was severely beaten and jumped by Savannah Police Officer Adrian Gates, the very same officer who cited Plaintiff for the off-duty officer.

5

16.     To the extent that an off-duty officer can tell another officer on-duty that a crime or traffic violation, or any other law was violated, and the third party officer can testify to this or this in a Court of law, then Plaintiff hereby sues the Defendants DEAL and the STATE OF GEORGIA and will seek a declaration of this Court enjoining the State Defendants from enforcing such statute.

17.     Under the Sixth Amendment to the United States Constitution, the Plaintiff and all citizens of the United States of America enjoy the rights and privileges secured and afforded to them by the Constitution. If such statue or Georgia state law exists, then Plaintiffs due process has been violated. Therefore, Plaintiff will ask this Court to strike down such State law and find that not only does such State law violate the Constitution, but the rights of the People and must be held unconstitutional.

## PARTIES

18.     Plaintiff Anthony Oliver, (hereafter "Mr. Oliver or Plaintiff") is, at all times relevant hereto, a resident of the County of Chatham, over the age of 18 years old, and an adult competent to bring this suit in this Court. At all times relevant to this lawsuit, Plaintiff at the time of the incident, was a resident of the State of Georgia, the City of Pooler.

19.     Defendant City of Pooler (hereafter "CITY OF POOLER") is a public entity organized and existing under the laws of the State of Georgia. Defendant operates the Pooler Police Department and employs several known and unknown corrupt law enforcement officers. Upon information and belief, Plaintiff believes and thereon alleges that the STATE OF GA provides funding to the CITY OF POOLER and its Police Department. Plaintiff seeks injunctive relief for, among other things, an order enjoining the STATE OF GA to cease and desist in providing this Defendant with the Plaintiffs tax payer dollars. Defendant is also

6

sued pursuant to a custom, policy and procedures as outlined in Monell v. Department of Social Services, 436 U.S. 658.

20.     Defendant City of Savannah (hereafter "CITY OF SAVANNAH") is a public entity organized and existing under the said laws of the State of Georgia. Defendant operates the Savannah Police Department. Upon information and belief, Plaintiff believes and thereon alleges that the STATE OF GA provides funding to the CITY OF SAVANNAH and its Police Department. Plaintiff seeks injunctive relief for, among other things, an order enjoining the STATE OF GA to cease and desist in providing this Defendant with the Plaintiffs tax payer dollars. Defendant is also sued pursuant to a custom, policy and procedures as outlined in Monell v. Department of Social Services, 436 U.S. 658.

21.     Defendant City of Port Wentworth (hereafter "CITY OF PORT WENTWORTH") is a public entity organized and existing under the said laws of the State of Georgia. Defendant operates the Port Wentworth Police Department, ("PWPD"). Upon information and belief, Plaintiff believes and thereon alleges that the STATE OF GA provides funding to the CITY OF PORT WENTWORTH and its Police Department. Plaintiff seeks injunctive relief for, among other things, an order enjoining the STATE OF GA to cease and desist in providing this Defendant with the Plaintiffs tax payer dollars. Defendant is also sued pursuant to a custom, policy and procedures as outlined in Monell v. Department of Social Services, 436 U.S. 658.

22.     Defendant City of Bloomingdale ("CITY OF BLOOMINGDALE") is a public entity organized and existing under the said laws of the State of Georgia. Defendant operates the Bloomingdale Police Department, ("BPD"). Upon information and belief, Plaintiff believes and thereon alleges that the STATE OF GA provides funding to the CITY OF BLOOMINGDALE and its corrupt Police Department. Plaintiff seeks injunctive relief for, among other things, an order

7

enjoining the STATE OF GA to cease and desist in providing this Defendant with the Plaintiffs tax payer dollars. Defendant is also sued pursuant to a custom, policy and procedures as outlined in Monell v. Department of Social Services, 436 U.S. 658.

23.     Defendant State of Georgia, ("STATE OF GA") is State agency that has direct control over off State agencies. Plaintiff sues this Defendant for only injunctive relief. Injunctive relief is available pursuant to Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Eleventh Amendment considerations and holding that § 1983 does not permit suits for damages against states).

24.     Defendant Nathan Deal., (hereafter "GOV. DEAL"), is the elected Governor of the State of Georgia, over the age of 18 years old, and is sued by the Plaintiff to order GOV. DEAL to investigate Plaintiff's allegations of a criminal enterprise taking place. Neither absolute, nor qualified immunity is available for state actors sued in the official capacity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Eleventh Amendment considerations and holding that § 1983 does not permit suits for damages against states).

25.     Defendant Charles Davis, ("DAVIS") is a peace officer employed with the City of Pooler, over the age of 18 years old and is sued in his individual capacity.

26.     Defendant Charles Davis, ("WILLIS") is a peace officer employed with the City of Bloomingdale, over the age of 18 years old and is sued in his individual capacity.

27.     Defendant Adrian Gates, ("GATES") is a peace officer employed with the City of Savannah, over the age of 18 years old and is sued in his individual capacity.

28.     Defendant Matt Libby, ("LIBBY") is the chief of Police for the Port Wentworth Police Department, over the age of 18 years old, and in sued in his individual and official capacity.

29.     Defendant Ashley Brown, ("LIBBY") is the chief of Police for the Pooler Police Department, over the age of 18 years old, and in sued in her individual and official capacity.

30.     Defendant Mark Revenew, ("REVENEW") is the chief of Police for the Pooler Police Department, over the age of 18 years old, and in sued in his individual and official capacity.

31.     Defendant Blair Jeffcoat, ("JEFFCOAT") is the chief of Police for the Bloomingdale Police Department, over the age of 18 years old, and in sued in his individual and official capacity.

32.     Plaintiff is informed and believes and thereon alleges that Defendants sued herein as DOES 1 through 10, inclusive, are employees of various police agencies under contract with the GADOT and the STATE OF GEORGIA. At all relevant times acting in the course and scope of their employment and each Defendant is the agent of the other. Plaintiff alleges that each of the Defendants named as "DOE" was in some manner responsible for the acts and omissions alleged herein, and Plaintiff will ask leave of this Court to amend the Complaint to allege such names and responsibility when that information is ascertained

33.     Plaintiff is informed and believes, and thereupon alleges that, at all times relevant herein, the individual Defendants, and each of them, were the agents, servants and employees of their respective employers of various City and County police agencies and were acting at all times within the scope of their agency and said employment with the knowledge and consent of their principals and employers. At all times herein, Defendants, and each of them, were acting under the color of state law.

## JURISDICTION AND VENUE

34.     This Court has original subject matter jurisdiction over the subject matter of this Complaint under the federal First Fourth, Sixth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 and 1985.

35.     Further, this civil rights action is brought to redress deprivations of rights privileges and immunities secured by the United States Constitution and by law. Jurisdiction is also proper pursuant to 28 U.S.C. §§ 2201(a) and 2202.

36.     Venue is proper in the Southern District of Georgia pursuant to 28 U.S.C. §§ 1391(b), 1391(b)(2), and 1402(b), in that a substantial part, if not all of the acts and/or omissions giving rise to Plaintiff's claims occurred in this District.

## ADMINISTRATIVE REMEDIES

37.     Prior to the filing of this lawsuit, Plaintiff sent each of the City Defendants Ante Litem Notices as well as Notices of Spoliation of Evidence to give the City Defendants the opportunity to review Plaintiffs State law claims.

## STATEMENT OF FACTS

38.     On April 25, 2018, Plaintiff was traveling on the I-16 freeway in downtown Savannah heading towards Memorial Hospital in Savannah. As the Plaintiff was exercising his right to travel freely, Plaintiff was observed the freeway traffic at a standstill. Just beyond the traffic, were two police vehicles instructing all vehicles to stay behind them until the two police cars were ready to proceed. That same night, the Georgia Department of Transportation, ("GADOT"), had two police officers from two different cities assigned to provide a security detail to the construction workers. Those two officers are identified as Defendants Charles Davis, ("DAVIS") of the Pooler Police Department, and his co-Defendant Adam Willis, ("WILLIS") of the Bloomingdale Police Department.

39.    With the traffic heading in the direction towards the end of the freeway, Defendant DAVIS spotted Plaintiff traveling in his vehicle heading towards downtown Savannah. Both DAVIS and WILLIS were leading traffic in their police vehicles within the City of Pooler when DAVIS spotted the Plaintiff in his new SUV. At all times relevant, DAVIS and WILLIS were "off-duty."

40.    After DAVIS spotted Plaintiff, DAVIS sped up traveling almost 85 miles an hour. DAVIS activated the overhead lights of the marked Pooler Police vehicle. Once Plaintiff saw the lights, Plaintiff slowed down. DAVIS was then recorded speeding up in an attempt to ram the Plaintiff. At one point, DAVIS sped up so fast, that Plaintiff nearly crashed into the highway wall. DAVIS decided to stop Plaintiff after leaving his jurisdiction to follow and harass the Plaintiff. After Plaintiff was stopped, DAVIS then approached Plaintiffs driver side door and began yelling and using foul language towards the Plaintiff for no reason. When Plaintiff asked if DAVIS was off-duty, DAVIS began threating Plaintiff with detention if he did not provide DAIVS with driver's license. In fear for his life and safety, Plaintiff gave his license to DAVIS.

41.    Without any delay, DAVIS began shouting at Plaintiff "I know who you are mother fucker."

42.    As Plaintiff was looking for his car insurance, DAVIS acknowledged that Plaintiff was filming him with three separate video cameras. DAVIS then said he knew who Plaintiff was and how Plaintiff was bringing a potential lawsuit against the City of Pooler. Further, DAVIS admitted on tape that Plaintiff is suing one of his fellow law enforcement officers from Chatham Sheriffs Department, as DAVIS admitted he worked for this agency as well.

43.     As the arguing continued, the other officers assigned to the road construction detail from the Cities of Port Wentworth and Bloomingdale.

44.     Instead of doing the job of providing security to the construction workers, Defendants DAVIS, WILLIS and at least two other unknown officers broke the security detail and used lights and sirens to come back up DAVIS for an alleged traffic stop. DAVIS alleged that Plaintiff made an illegal U-turn on the freeway. At no time and with the admission of DAVIS, was there evidence provided by DAVIS that those allegations were true.

45.     After yelling at the Plaintiff, DAVIS went back to his police vehicle and huddled around the other officers. From there, minutes turned into 40 minutes of Plaintiff sitting on the side of the freeway.

46.     At various times, as Plaintiff was filming DAVIS, WILLIS and the other unknown officers, DAVIS told Plaintiff to stop filming them, "or go to jail."

47.     Plaintiff sat in his car and minutes went by. Plaintiff continued to observe the Defendant Officers just standing around talking behind Plaintiffs vehicle. Plaintiff in fear for his safety, decided to call 911 to establish whether or not DAVIS, WILLIS and other unknown officers were really law enforcement.

48.     As Plaintiff stuck his head out of the passenger side of his vehicle, Plaintiff demanded to know the names of each of the officers who were on scene at the time. However, Plaintiff was not able to ascertain their names of the names of the police agencies because Defendant WILLIS used a high-power flash light to shine in Plaintiffs eyes and in the lens of his camera to knowing and intentionally interfere with Plaintiffs Federal First Amendment. At all times relevant, WILLIS knew and had reason to know that his misconduct was unlawful because he and DAVIS refused to provide their names, agency names or badge numbers. The only thing that DAVIS, WILLIS and the other unknown officers continued to do was stand around and talk.

49.   DAVIS and WILLIS knew they were off duty and with no official police powers, they knew that they lacked the most minimal police powers to issue a citation. So, Defendants DAVIS and WILLIS summoned a police officer from the City of Savannah, ("CITY OF SAVANNAH") Police Department identified as Adrian Gates, ("GATES").

50.   With an hour approaching, and Plaintiff running out of filming memory, Defendant Officer GATES appeared on scene. After standing around and talking for another 20 minutes, GATES approached the Plaintiff and informed him that DAVIS and WILLIS saw Plaintiff commit an illegal U-turn and that GATES would be issuing a citation to the Plaintiff. As GATES handed Plaintiff a clip board to sign the citation, Plaintiff instantly recognized GATES. Plaintiff without hesitation asked "is your name Adrian."

51.   Defendant Police Officer Adrian Gates refused to answer Plaintiffs question. Again, Plaintiff repeated his question. Again, GATES refused to answer Plaintiffs question.

52.   In July of 2017, Plaintiff was viscously attacked by Officer Gates and two other thugs at the Waffle House in Savannah. GATES and his criminal thug friends were drunk and waving a badge.

53.   Plaintiff continued and demanded to know the names of the officer's present at the scene of the stop. Plaintiff also had an affirmative right to know what agencies the officers were from as well. Instead, GATES, DAVIS and WILLIS refused to provide Plaintiff with their names, badge numbers and information as to what agency they were with. As GATES was issuing Plaintiff a traffic citation, both DAVIS and WILLIS were standing on the side of Plaintiffs SUV continuing to shine their high beam flash lights in Plaintiffs eyes to cause Plaintiff physical damage, as well as to impede Plaintiff from knowing their correct identities, all of which Plaintiff is entitled to under the Federal First Amendment.

13

54.    During the course of the traffic stop, Defendants DAVIS, WILLIS and
GATES knew and had reason to know that they lacked reasonable suspicion to
articulate whether Plaintiff actually committed a crime. Further, DAVIS, WILLIS
and GATES knew and had reason to know that a traffic stop that reach nearly an
hour constituted unlawful and thus would be subjecting the Plaintiff to prolonged
detention. Defendant DAVIS, WILLIS and GATES were acting under the color of
state law, and with complete and reckless disregard of the rights of the Plaintiff.

55.    Defendant WILLIS did everything in his power to ensure that the
Plaintiff would never know the identities of the Defendant Officers. With Officer
DAVIS removing his name tag coupled with WILLIS shinning a large high beam
flash light in Plaintiffs eyes, for sure they thought that Plaintiff would never know
who they were or are.

56.    After GATES issued Plaintiff the citation, GATES informed the
Plaintiff of a Court date, and that GATES would be appearing to testify for officer
DAVIS. At all times relevant, DAVIS and GATES knew this would amount to
third party hearsay.

57.    After minutes short of an hour, Plaintiff was finally given a copy of
the citation and told to leave. But Plaintiff still demanded to know the names of the
officers, but once again DAVIS, WILLIS and GATES still refused despite the fact
that and public servants, and under Georgia law as it is in virtually every state, a
tax payer, or citizen has an affirmative right to know that information. By all
accounts, the police work for the tax payer, the Plaintiff in this case.

58.    At all times relevant, DAVIS, WILLIS and GATES knew and had
reason to know they were being recorded by Plaintiff with three different video
cameras, but still violated Plaintiffs Constitutional rights anyways.

59.     At all times relevant, Defendants DAVIS, WILLIS, GATES and the other unknown officers were acting under the color of authority whether or not they were on duty.

60.     Plaintiff believes and thereon alleges that the Defendants DAVIS and WILLIS did not have permission to leave the construction site to initiate a traffic stop on the Plaintiff when in fact DAVIS and WILLIS were under contract with the GADOT to stay on site for the safety of those construction workers.

61.     Defendants DAVIS, WILLIS, GATES and the other unknown officers were acting under the color of authority knew that there was no basis for the traffic stop.

62.     Defendants DAVIS, WILLIS, GATES and the other unknown officers acted unreasonably in stopping the Plaintiffs' SUV and subjecting him to a prolonged investigatory detention when they knew that a prolonged detention would cause Plaintiff actual harm.

63.     As a result of the Defendants' actions, Plaintiff suffered damages in an amount to be proven at trial.

64.     As a direct and proximate result of the actions of the Defendants, the Plaintiff is entitled to an award of punitive damages to make a clear and present example of the individual Defendants DAVIS, WILLIS, GATES and the other unknown officers were acting under the color of authority.

## MONELL ALLEGATIONS

65.      Based upon the principles of set forth in *Monell V. New York City Department of Social Services, 436 U.S. 658 (1978),* the municipal Defendants City of Pooler, City of Savannah, City of Bloomingdale and the City of Port Wentworth bears liability because its policies, practices and/or customs caused the Plaintiffs injuries. In particular, Defendants Matt Libby, Ashley Brown, Mark Revenew and Blair Jeffcoat has condoned an ongoing pattern of misconduct by their police officers on and off duty. The municipal Defendants City of Pooler, City of Savannah, City of Bloomingdale and the City of Port Wentworth and its officials, including their respective police chiefs, maintained or permitted one or more of the following official policies, customs, or practices.

66.      Further, Defendants City of Pooler, City of Savannah, City of Bloomingdale,  City of Port Wentworth, Matt Libby, Ashley Brown, Mark Revenew and Blair Jeffcoat have condoned such activity to permit and allow their police officers to commit violations of federal law because when the individual police officers employed with the municipal Defendants are off duty and cause citations related to construction sites knowing that when the Defendant pays the citation, those funds go directly to the State of Georgia.

67.      In turn the State of Georgia takes the funds and pays public entities and their chiefs like City of Pooler, City of Savannah, City of Bloomingdale, City of Port Wentworth, Matt Libby, Ashley Brown, Mark Revenew and Blair Jeffcoat for providing security on the construction sites. These violations maintained or permitted one or more of the following official policies, customs, or practices:

A.      Failure to provide adequate training and supervision to the police officers with respect to constitutional limits on traffic stops, detention, prolonged detention, and third-party hearsay;

B.      Failure to adequately discipline or retraining officers involved in civil

16

and criminal misconduct;

C.     Selection, retention, and assignation of officer with demonstrable propensities for violence, dishonesty and other misconduct;

D.     Condonation and encouragement of officers in the belief that they can violate the rights of persons such as the Plaintiff with impunity, and that such civil and criminal misconduct will not adversely affect their opportunities for promotion and other employment benefits;

E.     Failure to provide proper training with respect to unlawful search and seizure procedures;

F.     Failure to practice and enforce citizen complaint reporting and investigations into officer misconduct with the police departments;

G.     Failure to properly train on the grounds of retaliation against private citizens; and

H.     Failure to stop their officers from initiating traffic stops on citizens when the officers are off-duty;

## INJUNCTIVE RELIEF

68.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure, Rule 57 and 65, and by the general legal and equitable powers of this Court. Plaintiff in entitled to bring an injunctive relief act against the Defendants Nathan Deal in his official capacity, and the State of Georgia.

69.     The State of Georgia, ("STATE OF GA") authorized by the elected Governor Nathan Deal, ("DEAL") use the Plaintiffs tax payer's dollars for many things in the State of Georgia. For an example, in many ways, Defendants STATE OF GA and DEAL use the tax payer's dollars in this State for things that make no sense whatsoever. The following is many examples of how the STATE OF GA and DEAL waste Plaintiffs' and the tax payer money:

17

A.   During St. Patrick's Day of this year, Defendants STATE OF GA and DEAL used hundred of thousands of dollars to send law enforcement officers to the Southern District of Georgia to conduct DUI checkpoints. For instance, on Highway 21 in Port Wentworth, Defendants STATE OF GA and DEAL paid for State Troopers and deputies of the Douglas County Sheriffs Department to conduct DUI check points in the County of Chatham, the City of Port Wentworth. Further, the Plaintiff and the tax payers of this State paid $ 300.00 a night to put the officers up in hotels in the City of Pooler. Plaintiff seeks an order of this Court enjoying the State Defendants from continuing this illegal practice.

B.   Defendants STATE OF GA and DEAL directly authorize State funds to be dispersed to local law enforcement agencies to pay local corrupt officers to provide security on all construction sites on the state freeways. Almost every state in this Country use State Police or Troopers to provide that security without having to pay local police. Plaintiff seeks an order of this Court enjoying the State Defendants from continuing this illegal practice.

C.   Upon information and belief, Defendants STATE OF GA and DEAL directly authorized, condoned, and/or ratified off-duty police officers in the State of Georgia to initiate traffic stops of citizens while off-duty. Under the Federal Fourth Amendment, the People of the State of Georgia have the right to be secure in their persons and their homes without the intrusion upon government officials and actors. By permitting, allowing and giving off-duty law enforcement officers to just do anything, everything and something to stop and detain people whenever they so choose is just outright despicable and is complete disgrace to the United States Constitution. By continuing to allow STATE OF GA and DEAL to give law enforcement the power to unlawfully stop and seize a citizen of this State at their whim and caprice, violates the Federal First Amendment.  Plaintiff seeks an order

18

of this Court enjoying the State Defendants from continuing this illegal practice.

     D.    Upon information and belief, the STATE OF GA and DEAL have in place a section of law under the OCGA that permits the testimony of one officer telling another officer what took place, and the second officer being allowed to testify in a Court of law of to what another officer told him or her. Under the Sixth Amendment of the Federal Constitution, every person and citizen like the Plaintiff enjoys the right to have witnesses brought against him. Without such witnesses being present, the Sixth Amendment right of the Plaintiff and the citizens of this State has been violated. Plaintiff seeks an order of this Court enjoying the State Defendants from continuing this illegal practice.

     E.    Upon information and belief, the STATE OF GA and DEAL give exclusive rights to law enforcement agencies around this State that allows police officers from every State, City and County police agencies to take home police vehicles and use those vehicles for personal use. In many instances, Plaintiff conducted over 380 hours of surveillance on the City of Pooler Police Department. In these instances, Plaintiff recorded over 30 police officers using City vehicles to go grocery shopping, going to the movies, bowling alley, picking up their children at a sporting event, using police vehicles to go off roading in the I-95 freeway on April 24, 2018 resulting in a tow truck having to come and pull the vehicle out of a ditch, and officers using City Police vehicles to go to their second job. And the officers are permitted to use City gas cards to put fill up the Police vehicle. Most of the police vehicles are SUV's and costs typically $ 55.00 dollars to fill up. Plaintiff seeks an order of this Court directing Defendant Nathan Deal to issue an executive order directing all law enforcement agencies across the State of Georgia to cease and desist in allowing Police agencies to continue to allow officers statewide to take home police vehicles and use city gas cards. Because every police agency in Georgia receives state funding, and those funds are Plaintiffs tax payer dollars, and

because Plaintiff did not give consent to the STATE OF GA, DEAL, or any law enforcement agencies to use his tax payer dollars, then Plaintiff has standing for injunctive relief on this cause of action. Plaintiff seeks an order of this Court for an order directing Governor Nathan Deal to issue an executive order directing all law enforcement agencies statewide to stop permitting all officers from taking home police vehicles, and using city, county or state gas cards for personal reasons, (i.e., grocery shopping, going to the gym, going to sporting events, etc.

   F.    Since 1978, the majority of States in the United States have followed case law rulings that compels them to "decriminalize" minor traffic infractions in this Country. Supreme Court rulings have made final, any legislation that similarly situated Americans must be treated similarly, and that any and all States that has ruled on a finding, all other states must follow these rulings as final. Under the Privileges and Immunities, Equal Protection and Due Process clauses of the United States Constitution, any State that ignores these procedures are violating the law of the United States. In 2012, the Supreme Court Chief Justice Carol Hunstein issued a statement that "Many of our citizens don't realize that Georgia criminalizes minor traffic offenses, entitling the offender to a trial by jury if requested". She recommended that certain traffic offenses no longer be treated as misdemeanors. Infractions such as traffic violations in many states in this country carry no jail time and are not treated as severe safety risks to the public. Misdemeanors carry jail time, including fines up to $2,000.00, but in the State of Georgia there is no distinction between an infraction and a misdemeanor and all drivers are treated as criminals no matter how minor the offense. As an example, the State of Colorado decriminalized minor traffic violations. Minor traffic ticket violations were previously a criminal charge, and since the decriminalization, are now civil matters and are not punishable by imprisonment. Certain traffic infractions are subject to a penalty of from five to one hundred dollars and assessment of points against the

Defendant. Because this is a civil matter, the terms guilty and not guilty are not used. Although a defendant may enter an answer of liable at first appearance, the right to trial is an important right which should never be waived. In civil matters, mean and bullying prosecutors do not participate in negotiations or trial. And if Defendant fails to appear, then a default judgment may be entered and the driver can be served properly with due process, and many new procedures are in place that do not rob someone of due process and civil liberties. In the State of Georgia, when a motorist does not have funds to pay the citation, the motorist is then placed on probation. After 12 months, the Defendant motorist is released from restraints of meeting a probation officer and be subjected to harassment by probation and the Courts for funds. The State of Georgia is aware that once the probation is over, the offender is not liable for any monies. And the State may not subject the person to double jeopardy by obtaining a judgment against him or her that would permit a property lean, wage garnishment, and others. By placing a person on probation for their inability to pay, the State ultimately violates the Federal Fourth Amendment of the United States Constitution. In the State of California for example, the State and Courts do not place a motorist or Defendant on probation for their inability to pay, nor any form of jail time. If the offender doesn't pay the ticket as prescribed by law, the State of California ensures to recoup their money by seizing the motorists' tax return, or lawsuit settlement proceeds. In the State of Georgia, a traffic ticket can turn ugly. It can become jail time. In California, all traffic offenders are required to report to an agency inside every Court called Revenue and Recovery. Through this entity, hundreds of millions of dollars are recovered each year. But again, in Georiga, when the 12-month probation runs out, that's it.

## A.     For the Defendants in All Traffic Offenses

For Defendants, the most obvious benefit is the elimination of incarceration, a punishment that the Supreme Court has consistently recognized to be "different in kind" from any other. The harms of incarceration are in many ways unique: not only are incarcerated traffic Defendants deprived of their liberty, but they may also experience severe collateral burdens including the threat of violence, rape, and disease. Incarceration also has well-known psychological and stigmatizing effects, and many conclude that incarceration is itself criminogenic. Defendants also gain from other aspects of decriminalizing traffic offense in the State of Georgia, and these benefits sometimes evaporate in practice and over time. Where offenses have been reclassified as civil, traffic Defendants can avoid accruing a criminal record and its attendant social stigma, particularly for employment purposes. Where police are constrained from arresting offenders, Defendants avoid the intrusions and fear associated with being arrested and having an arrest record. In addition, the very decision to decriminalize an offense signals that society deems the underlying conduct to be less culpable, thereby relieving the traffic Defendant of the stigma associated with traditional criminal conduct.

## B.     For the State of Georgia in All Traffic Offenses

For the State of Georiga, decriminalizing traffic tickets offers numerous immense savings in ways such as costs of prosecution, incarceration, appeals, jury trials, habeas corpus proceedings, overcrowded jails/prisons, defense counsel, and appellate counsel. Each year, the State of Georgia spends billions of dollars in revenue, only to recover nothing but a person on probation with no job. As an example, in the State of Oregon, the average cost of processing a single jail able misdemeanor—including prosecution, defense, and court costs, but not actual incarceration costs—is $1,697.67.  In the State of Chicago, Illinois, the State estimates of the costs of a single speeding ticket can range anywhere from $1,600

to \$7,200.68 for the purpose of a jury trial and appeal. Because Plaintiff was issued a citation, Plaintiff is entitled to sue for injunctive relief. And because probation is a form of Unlawful Search and Seizure, violates the Federal Fourth Amendment, the Plaintiff seeks an order of this Court enjoying the State Defendants, STATE OF GA and DEAL from continuing the practice of from continuing to place citizens on probation.

**AS TO COUNT I**

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983 – UNREASONABLE SEARCH AND SEIZURE**

**Against DAVIS, WILLIS, GATES and DOES 1 through 10**

70.    Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

71.    Defendants DAVIS, WILLIS, GATES and JOHN DOES stopped Plaintiff for a routine traffic violation.

72.    Defendants DAVIS, WILLIS, GATES and JOHN DOES lacked probable cause to stop and detain the Plaintiff in his new SUV vehicle.

73.    Defendants DAVIS, WILLIS, GATES and JOHN DOES lacked probable cause to detain Plaintiff during the traffic stop, or in the alternative, Defendants, and each of them detained Plaintiff for an unreasonable amount of time. Plaintiff had an affirmative right not to be detained for nearly an hour.

74.    Defendants DAVIS and GATES lacked probable cause to interrogate the Plaintiff for a traffic violation.

75.    Defendants DAVIS, WILLIS, GATES and JOHN DOES were objectively unreasonable.

76.    Defendants DAVIS, WILLIS, GATES and JOHN DOES acts violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures.

23

77.    Defendants DAVIS, WILLIS, GATES and JOHN DOES deprivation of Plaintiff's rights caused Plaintiff damages.

78.    Defendants DAVIS, WILLIS, GATES and JOHN DOES were acting under the color of state authority.

79.    Defendants DAVIS, WILLIS, GATES and JOHN DOES clearly acted willfully, knowingly and purposefully and/or with complete deliberate indifference to deprive Plaintiff of his Constitutional Rights.  As a result of the nature of the Defendant's conduct, Plaintiff is entitled to recover punitive damages against the individual Defendants.

## AS TO COUNT II

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983 – VIOLATION OF FEDERAL CIVIL RIGHTS

## Against DAVIS, WILLIS, GATES and DOES 1 through 10

## (EXCEPT STATE OF GEORGIA AND NATHAN DEAL)

80.    Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

81.    42 U.S.C. § 1983 provides in part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit at equity or other proper proceeding for redress.

82.    Plaintiff had a firmly established right under the Fourth Amendment to be free from unreasonable search, seizure and prolonged detention.

24

83.    A detention without reasonable suspicion that a citizen has committed a crime violates the Fourth Amendment prohibition on unreasonable searches and seizure as well as prolonged detention.

84.    A police officer may stop and briefly detain a citizen based on a reasonable suspicion of involvement in a crime.

85.    Defendants DAVIS, WILLIS, GATES and JOHN DOES knew and had reason to know that there was no basis for a stop.

86.    Defendants DAVIS, WILLIS, GATES and JOHN DOES acted unreasonably in stopping the Plaintiffs' SUV and subjecting Plaintiff to prolonged investigatory detention. The supreme court has strictly held that anything over a 20-minute stop constitutes a prolonged detention and violates Plaintiffs Federal Fourth Amendment right.

87.    As a result of Defendants' DAVIS, WILLIS, GATES and JOHN DOES actions, Plaintiff suffered damages in the amount to be proven at trial.

## AS TO COUNT III

## THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 – RETALIATION

### Against DAVIS and DOES 1 through 10

88.    Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

89.    Defendant DAVIS stopped Plaintiff in his SUV for personal reasons.

90.    Once DAVIS spoke to Plaintiff outside the driver door, DAVIS knew that Plaintiff was recording him. DAVIS admitted, despite being recorded, that DAVIS knew Plaintiff and about how Plaintiff was bringing a lawsuit against the City of Pooler and 71 other police agencies for prospective injunctive relief and civil rights violations.

91.    Despite knowing he was being recorded, DAVIS caused Plaintiff to be cited for personal reasons based on Plaintiff exercising his Federal First Amendment right.

92.    Defendant DAVIS was also upset about Plaintiff filing a previous lawsuit against a Chatham County Sheriffs deputy acting as a Special Deputy with the United States Marshals Service. Defendant DAVIS did not want Plaintiff to petition the government for a redress of grievances.

93.    Plaintiff continued, while recording DAVIS demanding to know his name and badge number. Plaintiff also continued to ask WILLIS for his name, badge number, and agency name. Instead, WILLIS responded by shinning high power flash lights in Plaintiff's face and in his camera lenses to prevent Plaintiff from obtaining the officers names, badge numbers, and agency names. At all times relevant, Plaintiff also video recorded WILLIS shinning the flash light in Plaintiffs face and camera.

94.    Defendant GATES later arrived on scene, and when Plaintiff immediately asked GATES if his name was Adrian, GATES refused to answer, and GATES also intentionally put a wrong badge and/or employee number of the bottom of the citation leading internal affairs investigators from Savannah Police Department on a wild goose chase.

95.    Plaintiff exercised his rights under the Federal First Amendment to ask for the officer's names, badge numbers, and agency names. But to no avail, the Defendants DAVIS, WILLIS, GATES and JOHN DOES violated Plaintiffs First Amendment right to petition the government.

96.    Defendants DAVIS, WILLIS, GATES and JOHN DOES acted under the color of state law and authority.

97.    As a result of the Defendants actions, Plaintiff is entitled to an award of punitive damages to make an example of the Defendants.

## AS TO COUNT IV

## FOURTH CAUSE OF ACTION

## 42 U.S.C. § 1983 – MONELL MUNICIPAL LIABILITY

## Against CITY OF POOLER, CITY OF SAVANNAH, CITY OF PORT WENTWORTH, CITY OF BLOOMINGDALE, MATT LIBBY, ASHLEY BROWN, MARK REVENEW, BLAIR JEFFCOAT and DOES 1 through 10

98.    Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

99.    Defendants, and each of them promulgated and maintained an unconstitutional policy, ordinance or regulation which allowed its police officers to conduct unlawful searches and seizures, and prolonged detentions while on and off duty.

100.    Defendants, and each them, was deliberately indifferent to the widespread misconduct on the part of the police officers employed with these agencies in detaining citizens who had committed no crimes.

101.    During the relevant period, Defendant officers, DAVIS, WILLIS, GATES and JOHN DOES were acting pursuant the policy of Defendants City of Pooler, City of Savannah, City of Bloomingdale, and the City of Port Wentworth.

102.    Defendants, and each of them, knew or should have known of the risks and violations of federal civil rights committed by the officers.

103.    The Defendants were deliberately indifferent to the rights of the Plaintiff to be free from, and protected from, harm by the civil rights violations of their police officers.

104.    The unlawful and illegal conduct of the Defendants deprived Plaintiff of the rights, privileges and immunities secured to him by the Constitutions of the United States and of the State of Georgia.

27

## AS TO COUNT V

## FIRTH CAUSE OF ACTION

## 42 U.S.C. § 1983 – FAILURE TO SUPERVISE AND DISCIPLINE

## Against CITY OF POOLER, CITY OF SAVANNAH, CITY OF PORT WENTWORTH, CITY OF BLOOMINGDALE, MATT LIBBY, ASHLEY BROWN, MARK REVENEW, BLAIR JEFFCOAT and DOES 1 through 10

105.   Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

106.   The Municipal Defendants City of Pooler, City of Savannah, City of Bloomingdale, City of Port Wentworth, Police Chiefs Matt Libby, Ashley Brown, Mark Revenew and Blair Jeffcoat, as a matter of custom, practice and policy, failed to maintain adequate and proper training as to the Constitutional rights of citizens, traffic violators, and arrestees; to prevent the consistent and systematic use of retaliation, unlawful search and seizure, prolonged detention, and to prevent extra judicial punishment by officers.

107.   Defendants City of Pooler, City of Savannah, City of Bloomingdale, City of Port Wentworth, Police Chiefs Matt Libby, Ashley Brown, Mark Revenew and Blair Jeffcoat failed to provide adequate training to their police officers on the proper protocol and procedures on detentions, traffic stops, searches, seizures, and arrest of citizens. Defendants, and each of them also personally ratified, allowed, and authorized their officers to use retaliation against citizens of the community, as well as the Plaintiff.

108.   Therefore, these Municipal Defendants, and Police Chiefs with deliberate indifference, disregarded a duty to protect the public, and the Plaintiff from official misconduct.

109.    The failure to promulgate or maintain constitutionally adequate training was done with deliberate indifference to the rights of the Plaintiff in this case.

110.    The constitutionally infirm lack of adequate training as to their officers in this case, caused Plaintiffs injuries.

## AS TO COUNT V

## SIXTH CAUSE OF ACTION

## INJUNTIVE RELIEF

### Against STATE OF GA and NATHAN DEAL, official capacity

111.    Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

112.    Plaintiff is informed and believes and thereon alleges that, unless enjoined, Defendants, and each of them, will continue to engage in the unlawful acts and in the policies and practices described above, in violation of the legal and Constitutional rights of the Plaintiff and the citizens of the State of Georgia.

113.    Plaintiff faces the real and immediate threat of repeated and irreparable injury and continuing, present adverse effects as a result of the unlawful misconduct, policies and practices of the Defendants. Plaintiff has no adequate and complete remedy at law. Therefore, this Court should order:

A.    This Court should order these State Defendants to stop using local City and County law enforcement officers to provide security of the construction freeway details, and use State troopers since it's a State highway;

B.    This Court should order these State Defendants to revoke, vacate, and suspend all peace officer powers to off-duty law enforcement officers statewide;

C.    This Court should order these State Defendants to vacate any state law, or statute that permits third party hearsay from one peace officer to another;

D.     This Court should order Defendant Nathan Deal to issue an executive order to all Police Chiefs, and elected Sheriffs directing them to cease and desist in allowing their deputies, police officers, and State troopers from taking home police vehicles, and using City, County, and State gas cards for personal reasons. (i.e., grocery shopping, picking up kids at sports events, buying bananas, off roading, attending their second jobs while operating a police vehicle and again, using the City, County, and State gas cards;

E.     This Court should order these State Defendants to decriminalize all traffic related offenses; and

F.     Further, this Court should order these State Defendants to cease and desist in placing people with no money on probation, and for this Court to find that placing a person on probation for their inability to pay violates due process, as well as the Federal Fourth Amendment.

///

///

///

30

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as more fully set forth below;

1.      For an award of compensatory and financial damages in the amount of $ 4,000,000.00 from the Defendants jointly and severally;

2.      For special damages, according to proof;

3.      In addition to actual damages, statutory damages as allowed by law,

4.      For costs of suit pursuant to Fed.R.Civ.P. 54(d), and 28 U.S.C. § 1920;

5.      For an award of punitive damages against the individual Defendant Officers;

6.      This Court should order these State Defendants to stop using local City and County law enforcement officers to provide security of the construction freeway details, and use State troopers since it's a State highway;

7.      This Court should order these State Defendants to revoke, vacate, and suspend all peace officer powers to off-duty law enforcement officers statewide;

8.      This Court should order these State Defendants to vacate any state law, or statute that permits third party hearsay from one peace officer to another;

9.      This Court should order Defendant Nathan Deal to issue an executive order to all Police Chiefs, and elected Sheriffs directing them to cease and desist in allowing their deputies, police officers, and State troopers from taking home police vehicles, and using City, County, and State gas cards for personal reasons. (i.e., grocery shopping, picking up kids at sports events, buying bananas, off roading, attending their second jobs while operating a police vehicle and again, using the City, County, and State gas cards;

10.    This Court should order these State Defendants to decriminalize all traffic related offenses; and

11.    Further, this Court should order these State Defendants to cease and desist in placing people with no money on probation, and for this Court to find that placing a person on probation for their inability to pay violates due process, as well as the Federal Fourth Amendment.

12.    Any and other further relief as this Court deems just and proper.


Respectfully submitted,

Dated:  May 1, 2018                    By: _____
                                                   Anthony Oliver., Plaintiff Pro Se


**JURY TRIAL DEMANDED**


Respectfully submitted,

Dated:  May 1, 2018                    By: _____
                                                   Anthony Oliver., Plaintiff Pro Se