FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2018 JUN 12 PM 12: 20
CLERK_____
SO. DIST. OF GA.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| ANTHONY OLIVER, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF POOLER, a public entity; CITY OF SAVANNAH, a public entity; CITY OF PORT WENTWORTH, a public municipality; CITY OF BLOOMINGDALE, a public entity; STATE OF GEORGIA, a state municipality; NATHAN DEAL, in his official capacity as GOVERNOR; CHARLES DAVIS, in his individual capacity; ADAM WILLIS, in his individual capacity; ADRIAN GATES, in his individual capacity; MATT LIBBY, in his individual and official capacity; ASHLEY BROWN, individual and official capacity; MARK REVENEW, in his individual and official capacity BLAIR JEFFCOAT, in his individual and official capacity; DOES 1-10, inclusive.<br><br>Defendants. | Case No.:<br><br>4:18-cv-00100-WTM-GRS |

**PLAINTIFFS OPPOSITION TO DISMISS**

**ECF Dkt. 9**

1

## RELEVANT FACTS

On April 25, 2018, Plaintiff was allegedly pulled over by Officer Charles Davis of the City of Pooler Police Department. Officer Davis insisted that he (Davis) knew the Plaintiff, and that Plaintiff would be receiving a citation for making an improper U-turn.

Officer Davis knowing left not only the jurisdiction of the City of Pooler, but most importantly, Officer Davis knowing abandoned the constructions site where he and other off duty officers where contracted with by the State of Georgia to provide coverage and/or security for the construction crews.

Officer Davis and three other officers from the City of Port Wentworth, and the City of Bloomingdale arrived on scene. After the traffic stop, the individual Defendants would later go on to keep Plaintiff at the scene a few minutes short of an hour.

Plaintiff later obtained GPS, cell phone records, latitude and longitude coordinates, as well as open records requests that showed not only did the individual officers abandoned their posts, but also keep Plaintiff in his car on the side of the freeway while the individual officers waited for Savannah Police Officer Adrian Gates to come issue a citation. A traffic stop that lasted 48 minutes from start to finish.

As Plaintiff waited for Officer Gates, it was Officer Adam Willis who personally interfered with Plaintiffs Constitutional Rights by shinning bright, high end flash lights in Plaintiff's face to prevent Plaintiff from obtaining the names, agency names and badge numbers. To date, Plaintiff has suffered damage to both of his eyes as a result of the actions of Officer Willis.

The individual Defendant Officers intentionally caused Plaintiff to be subjected to prolonged detention.

## STANDARD OF REVIEW ON A MOTION TO DISMISS

A motion to dismiss can only be granted if there is no set of facts that would entitle plaintiffs to a verdict on the claims in issue. Applicable standards state that the facts alleged in the complaint are accepted as true. Scheuer v. Rhoades, 416 U.S. 232, 236 (1974); Franks v. Ross, 313 F.3d 184,192 (4th Cir. 2002). In addition, all reasonable inferences must be made in favor of plaintiffs. Johnson v. Mueller, 415 F.2d 354 (4th Cir. 1969); MacKethan v. Peat. Marwick. Mitchell & Co., 439 F. Supp. 1090 (E.D. Va. 1977).

Under Ashcroft v. Iqbal, to overcome a motion to dismiss, plaintiffs must have alleged facts in a complaint which also "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## ARGUMENT [1]

### I.   The prolonged Detention of Plaintiff violates the Federal Fourth Amendment

The Supreme Court held that In Rodriguez v. United States, 135 S. Ct. 1609 (2015), the Officer in this case completed a traffic stop for driving on the shoulder of a highway after checking the vehicle registration and driver's licenses of the driver and passenger, conducting a warrant check, returning all documents, and issuing the driver a warning ticket. The officer then asked the driver for consent to walk his drug dog around the vehicle, but the driver refused to give his consent. Nonetheless, the officer told the driver to turn off the ignition, leave the vehicle, and wait for a second officer. When the second officer arrived, the first officer walked his drug dog around the car, and the dog alerted to the presence of drugs. A

---

[1] Since each and every Defendant cites to the same case law, makes the same legal arguments, Plaintiff suggested to defense counsels that they should have filed a joint motion to dismiss, but they failed to do so. Therefore, because all of the facts are the same, Plaintiff will duplicate the same argument.

3

search of the vehicle revealed methamphetamine. Seven to eight minutes had elapsed from the time the officer issued the written warning until the dog's alert.

The Court recognized that during a traffic stop, in addition to determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the stop, such as (1) checking a driver's license; (2) inspecting a vehicle's registration and insurance; and (3) determining whether there are outstanding warrants. The Court said that these checks serve the same objective as enforcement of traffic laws, ensuring that vehicles on the road are operated safely and responsibly. However, it noted that an officer must act reasonably in completing these authorized checks—that is, an officer cannot deliberately or unreasonably delay the checks to allow time, for example, for a drug dog to arrive at the scene. The Supreme Court held that the Officer clearly violated the drivers Federal Fourth Amendment.

This is the case here. Defendant Officers stopped Plaintiff, yelled at him, shined high beam flash lights and huddled around as two identified, and one unidentified Officer stood around waiting for Defendant Savannah Officer Adrian Gates to arrive to issue the citation. After Officer Gates arrived on scene, Gates then spent several other minutes talking to his co-Defendants. Officer Gates was placed on notice as Plaintiff demanded to know if he "Adrian" and Officer Gates refused to answer Plaintiffs' question thereby denying and interfering with the Plaintiffs first amendment right.

## II. The Defendant Officers are Not Entitled to Qualified Immunity At the Pleading Stage

Qualified immunity protects government officers and deputies from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which reasonable person would have known. Maxwell v. County of San Diego, 697 F.3d 941 (9th Cir. 2012).

Qualified immunity is ordinarily a question of law for the court and should be decided at the earliest possible point in the litigation. See Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curium) (reversing Ninth Circuit holding that qualified immunity was a question of fact for the jury). The qualified immunity analysis involves two separate steps. First, the court determines whether the facts "show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). If the answer is no, then the defendants are entitled to immunity and the claim must be dismissed. If the answer is yes, the court must determine "whether the right was clearly established" at the time of the alleged unlawful action. Id. A right is clearly established if "a reasonable official would understand that what he is doing violates that right." Id. at 202. If the answer is no, then the officer is entitled to qualified immunity. While the order in which these questions are addressed is left to the court's "sound discretion," "it is often beneficial" to perform the analysis in the sequence outlined above. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) (the two-prong analysis under Saucier is a flexible, not mandatory procedure), A defendant is not entitled to qualified immunity simply because there is no specific prior case prohibiting the specific behavior in precisely the circumstances involved. See Headwaters Forest Defense v. County of Humboldt, 276 F.3d 1125 (9th Cir. 2002); Boyd v. Benton County, 374 F.3d 773,

5

781 (9th Cir. 2004); Drummond v. City of Anaheim, 343 F.3d 1052, 1060 (9th Cir. 2003).

Here, although not entirely pled, the Defendant Officers Adrian Gates, Charles Davis, Adam Willis, and JOHN DOE 1 from the City of Port Wentworth held Plaintiff at bay longer then necessary to issue a traffic citation. So therefore, the Defendant Officers violated Plaintiffs Fourth Amendment Constitutional Right, and thus, the Defendant Officers are not entitled to qualified immunity.

If the Defendant Savannah Police Officer knew or had reason to know what he was doing was in violation of the Federal Fourth Amendment, knew the right was clearly established, and acted under the color of authority, then qualified immunity is not available to Defendant Savannah Police Officer Adrian Gates.

### III. General Principles Applicable to 42 U.S.C. § 1983

> 42 U.S.C. § 1983 provides in relevant part that:
> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992).

To succeed in a sec 1983 case, the burden is upon the plaintiff to establish by a preponderance of the evidence that: (1) the defendant acted under color of law; and (2) the act(s) of the defendant deprived the plaintiff of her particular rights under the United States Constitution (as more particularly explained in later instructions.) Causation and damages. Wood v. Strickland, 420 U.S. 308 (1985).

Defendant Savannah Police Officer Adrian Gates asserts that all of the Plaintiffs claims are barred by Heck v. Humphrey. Here, Plaintiff only incorporates the traffic stop. By no means no Plaintiff challenge the citation. Plaintiff seeks to file a first amended complaint to list only three causes of actions. 1) Prolonged detention in violation of the Federal Fourth Amendment; and; 2) IIED; and 3) NIED.

## CONCLUSION

For all the foregoing reasons, the Court should sustain the Motion to Dismiss with leave to file a First Amended Complaint.

Dated: June 11, 2018            By: _____
                                     Anthony Oliver., Plaintiff Pro Se